**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

UNITED STATES OF AMERICA

v.  CASE NO: 8:07-cr-119-T-26MAP

JESUS ERNESTO MONDRAGON-GARCIA
JOSE ALONSO NUNEZ-GUTIERREZ
_____/

**O R D E R**

Defendant Mondragon-Garcia, joined by Defendant Nunez-Gutierrez, have filed motions to dismiss the two-count indictment pending against them in which they challenge the jurisdiction of this Court.[1] They contend that their presence before the Court was procured in violation of various treaties governing extradition to which the United States and Panama are parties. The Government has filed a response.[2] Defendants have moved to file a reply to the Government's response which the Court deems unnecessary.[3] After careful consideration of the parties' submissions, together with the governing legal principles, the Court concludes that Defendants' motions lack merit and are due to be denied.

According to Defendants' factual representations, Panamanian officials detained them on money-laundering accusations on March 17, 2007, at the Panama City airport as

---

[1] See dockets 43 and 45.

[2] See docket 46.

[3] See docket 47.

they were attempting to leave the country of Panama.  On April 11, 2007, a federal grand jury convened in the Middle District of Florida returned the indictment in this case. Later, on April 25, 2007, the United States Embassy sent a diplomatic note to the Ministry of Foreign Relations of Panama requesting the conditional release (as opposed to extradition) of the Defendants.

In that note, which is attached to Defendant Mondragon-Garcia's motion as Exhibit A, the Embassy represented that both Defendants were Mexican citizens wanted for trial in this district on narcotics trafficking charges contained in a specified federal indictment and that a United States Magistrate Judge had issued a warrant for their arrest on April 11, 2007, which "remain[ed] valid and executable."  The Embassy also claimed that both Defendants "are members of the Sinaloa Cartel in Mexico, one of the strongest and most dangerous criminal organizations in that country[,]" that they "were caught *in fraganti* when both were transporting in M/V Gatun nineteen (19) tons or forty two thousand eight hundred forty five pounds (42,845) of cocaine[,]" and that they "are highly dangerous," thus prompting the Embassy to request their conditional release instead of their extradition.  The Embassy based its request for conditional release on Article 2505 of the Judicial Code of the Republic of Panama, as well as the Mutual Assistance Treaty between the United States and Panama and the 1998 United Nations Drug Convention to which both countries are signatories.

Defendants' core complaint is that the diplomatic note "did not comport with extradition treaty requirements in that it did not contain an honest and truthful statement of the constituent facts allegedly connecting the within defendants to the crimes charged

against them in this country and, as such, constituted both a violation of the requirements that such undertakings in the context of extradition proceedings be truthful as well as outrageous governmental misconduct."[4]  In particular, they complain that the United States, acting through its Embassy, offered no factual support for the claims that both Defendants were members of the Sinaloa Cartel, that they were highly dangerous, and that they were involved in the transportation of cocaine on the M/V Gatun.  Significantly, neither Defendant contends that they are now being prosecuted for offenses which were not the subject of the diplomatic note's request for their conditional release.  Hence, as will be discussed, even assuming the treaties at issue and the Panamanian Judicial Code required such proof, Defendants lack standing to question these omissions of fact because such omissions would only constitute procedural violations.

In <u>United States v. Antonakeas</u>, 255 F.3d 714 (9th Cir. 2001), the Ninth Circuit Court of Appeals discussed the issue of whether a defendant has standing to raise noncompliance with procedural provisions of an extradition treaty as a bar to the jurisdiction of a district court in a criminal proceeding.  In that case, the defendant failed to appear for sentencing following a jury verdict of guilt.  He was later arrested at the Munich airport in Germany.  The Department of Justice requested the United States State Department to cable the United States Embassy in Germany and request that German officials arrest and extradite the defendant.  In the request, the Department of Justice referred to the extradition treaty between the United States and Germany as the basis for extradition.  The Department of Justice made assurances that it would provide the

---

[4] <u>See</u> docket 43, page 13.

supporting documentation required by the treaty within the time fixed by the treaty. German officials later approved the defendant's extradition despite the fact that the supporting documentation was not provided within the time required by the treaty.

In affirming the district court's denial of the defendant's motion to terminate the proceedings for lack of jurisdiction based on noncompliance with the treaty's deadline provisions, the Ninth Circuit noted that the Supreme Court had previously recognized the right of an extradited defendant to enforce what is known as a "specialty" provision of a treaty, that is, the requirement that the receiving country may prosecute the defendant only for the offenses that are enumerated in the treaty and for which extradition was requested.  Id. at 719 (citing United States v. Rauscher, 119 U.S. 407, 409-10, 430, 433, 7 S.Ct. 234 (1886) and United States v. Alvarez-Machain, 504 U.S. 665, 659-60, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992)).  As the Court went on to explain, "once the person sought has been turned over to the requesting country for specified offenses, the requested country has no recourse if the offenses ultimately charged are different from the offenses upon which extradition was allowed." 255 F.3d at 720.  Consequently, as the Court concluded, "it is necessary to allow the person extradited to raise this type of treaty violation in the requesting country because the requested country has no opportunity to enforce the specialty provision on its own behalf."  Id. (footnote omitted).

The Ninth Circuit determined, however, that "[u]nlike specialty, which is a substantive requirement that goes to the heart of the requested country's decision to allow extradition, a deadline is a procedural requirement without similar import.  If a deadline is missed during the extradition process, the requested country can simply refuse extradition

on that ground." Id. So, too, in this case, again assuming the relevant treaties and Panamanian code provision dictated that the United States provide a factual basis supporting its allegations with regard to Defendants' membership in the Sinaloa Cartel, their highly dangerous propensities, and their involvement in the charged drug trafficking venture, apart from the indictment and the warrants issued for their arrests, Panama could have refused to release the Defendants until such supporting facts were forthcoming. Because, however, the Panamanian officials obviously determined that the treaty and code provision were fulfilled by releasing Defendants to the custody of the United States, Defendants are now foreclosed under the rationale of Antonakeas from raising before this Court the alleged omission on the part of the United States Embassy of a sufficient factual basis supporting some of the Embassy's claims in the diplomatic note. See also United States v. Herbert, 313 F.Supp.2d 324, 331 (S.D. N.Y. 2004) (observing that "[c]ourts have consistently refused to allow defendants standing to raise procedural violations to extradition treaties" and concluding that because the defendant in that case sought to raise procedural violations to the extradition treaty which could have been raised by the surrendering country, he had no standing to do so) (citing United States v. Najohn, 785 F.2d 1420, 1422 (9th Cir. 1986) and Antonakeas).[5]

---

[5] The Court notes that the Eleventh Circuit has held "that an individual extradited pursuant to an extradition treaty has standing under the doctrine of specialty to raise any objections which the requested nation might have asserted." United States v. Puentes, 50 F.3d 1567, 1575 (11th Cir. 1995). As discussed in the body of this order, however, neither Defendant is invoking the doctrine of specialty in his attack on the jurisidiction of this Court.

Up until this point, and only within the context of the critical issue of standing, the Court has assumed that the relevant treaty provisions required the United States to furnish Panamanian officials the type of information Defendants allege should have been provided before Panama released them to the United States. The Court, however, rejects outright Defendants' suggestion that the Court engraft on the relevant treaty provisions the requirement that the United States was obligated to furnish Panamanian officials "solid 'evidence' of guilt[.]"[6] A court's construction of a treaty is governed by the same principles as the interpretation of a statute. See In re: Commissioner's Subpoenas, 325 F.3d 1287, 1294-95 (11th Cir. 2003) (and cases cited). Consequently, when the words of a treaty are clear and unambiguous, a court has no authority to amend or alter the text of the treaty. Id. (and cases cited). To follow Defendants' suggestion would be in complete derogation of this fundamental principle of treaty construction and interpretation.

Finally, even assuming Defendants possessed standing, their arguments still have no merit for the following two reasons. First, the Court agrees with the Government that "[t]he conclusory averments in the Diplomatic Note objected to by the defendants are largely irrelevant to the summary extradition procedure properly employed here." By excising the alleged offending language from the Note, there remains a sufficient factual basis to support extradition in the form of a detailed explanation of the charges brought against Defendants by the federal grand jury in this case, as well as the representation that a federal judicial official had issued a warrant for their arrest based on the indictment which "remain[ed] valid and executable." Second, even assuming the omission of a

---

[6] See docket 43, page 5.

factual basis on the part of the United States Embassy with respect to Defendants' involvement with the Sinaloa Cartel, their dangerous propensities, and their participation in the transportation of cocaine on the M/V Gatun was somehow infected with the badges of fraud, such an act does not rise to the level of outrageous governmental misconduct justifying the dismissal of the indictment on jurisdictional grounds.  See United States v. Evans, 667 F.Supp. 974, 979-80 (S.D. N.Y. 1987).

**ACCORDINGLY**, for the reasons expressed, it is **ORDERED AND ADJUDGED** that Defendants' Motions to Dismiss (Dkts. 43 and 45) are denied. Defendants' Motion for Leave to File Reply (Dkt. 47) is also denied.

**DONE AND ORDERED** at Tampa, Florida, on November 21, 2007.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record